Willard WILLIAMS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 11, 1955.

C. A. Noble, Jr., Hazard, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

CAMMACK, Justice.

Willard Williams is appealing from a judgment sentencing him to one year in prison on a charge of child desertion. He contends the trial court erred (1) in refusing to direct a verdict in his favor; (2) in permitting the Commonwealth's Attorney to interrogate witnesses concerning his association with a woman other than his wife; (3) in refusing to permit an avowal to be made a part of the record; and (4) in making an improper and prejudicial remark to his attorney.

Williams is 37 years old. He and his wife, the chief prosecuting witness, have been married about 18 years. They have seven children. He was convicted of deserting three of these children, all of whom are under 16 years of age.

In September, 1951, about two and one-half years prior to his trial in May, 1954, Williams left his home in Perry County and went to Ohio for the ostensible purpose of seeking employment. He has not lived with his family since that date, though he has visited them from time to time. The children often were in destitute circumstances during the period of time involved. Mrs. Williams testified that sometimes they had very little to eat and had insufficient clothing; her brother gave her some money and helped her in other ways; her neighbors gave her a "pound shower" and also gave them clothing; a church in the community gave her $38 to buy food and coal; one of the children had to go without shoes in cold weather and "the preacher" bought her a pair of shoes; and she was paid $48 per month by the Welfare Department for less than a year. She testified also that her husband came home occasionally and brought groceries; he once paid a grocery bill for her; and sometimes he sent money to her. She stated positively that the children suffered for want of food and clothing. Mrs. Williams stated on cross-examination that she owns 45 acres of land and has her own home on it. Neighbors of Mrs. Williams corroborated her testimony concerning the family's poverty-stricken condition.

Williams said he left Perry County because he was unable to find work, and that he found odd jobs after he left and sent what money he could to his family. His average monthly earnings, according to him, amounted to about $60 to $70. He worked for the New York Central Railroad for about a month in December, 1951, or January, 1952. He was unable to state the exact amount of money he sent to his fam-

ily. He produced money order receipts showing that a total of $103 was sent Mrs. Williams during the period in question; however, he said he did not keep all of the receipts and that he sometimes sent the money in cash. He took groceries and clothing to his family occasionally and visited them about once a month. He stated that the family was about as well off after he left as they were before. His 15 year old son, Johnnie, said the same. The evidence shows that they had been helped by relatives and friends before he left.

■ We are of the opinion that the evidence of Williams' guilt was sufficient to take the case to the jury. The fact that friends and relatives may have prevented the deserted children from suffering unduly is no defense for the delinquent father under KRS 435.240. Black v. Commonwealth, 259 Ky. 169, 82 S.W.2d 321; Ragsdale v. Commonwealth, 195 Ky. 750, 243 S.W. 1056. There is no showing that Williams was physically unable to work or that he could not obtain employment at a wage sufficient to enable him to support his children. The fact that he occasionally or frequently sent them some money or food is not enough of itself to relieve him from the charge of deserting them.

■ During the direct examination of Mrs. Williams she was asked by the Commonwealth's Attorney if her husband had said anything about having another child he was supporting. Williams objected and the jury was admonished not to consider the question or her answer. Upon his cross-examination of Wesley Holbrook, the Commonwealth's Attorney questioned him concerning whether Williams was supporting another woman. An objection to this questioning was sustained also. Williams' son, Johnnie, was questioned concerning the same subject. It is contended by Williams that this line of questioning was prejudicial error. However, we note that the court sustained objections to the questions and in one instance admonished the jury not to consider the question or answer. With the exception of Mrs. Williams' answer regarding his alleged other child, the answers to the questions objected to were favorable to Williams. We conclude that the questioning was not prejudicial to Williams' substantial rights, though it is true in this case that the Commonwealth's Attorney should not have persisted in asking the questions.

■ Williams contends also that the court erred in refusing to permit an avowal of a witness to be made a part of the record. Gabe Fugate testified on direct examination that Williams' children were without adequate food and clothing and that he had assisted them. On cross-examination he was asked by Williams' attorney if he had helped anyone else in the community. An objection to this question was sustained on the ground that it was immaterial, and the court refused to permit him to answer it by way of avowal for the same reason. Whether Mr. Fugate had helped other needy families was immaterial and it was not error for the court to refuse to permit an avowal, though the better practice would have been to admit it. At the same time the court made a statement which Williams argues most vigorously constituted reversible error. The court stated:

"* * * if counsel had as much intelligence as he ought to have, he wouldn't even ask a question like that because it's absolutely immaterial."

While the remark by the court was improper, we do not think it was so prejudicial as to constitute reversible error.

■ By way of avowal Mrs. Williams stated that she did not want to appear before the grand jury when the indictment against her husband was returned, and that she was told by Mr. Fugate that she would be put in jail if she did not appear before the grand jury. Williams argues that the jury should have been permitted to hear this testimony. However, this could not have been prejudicial in view of her testimony that she was not afraid to testify and that no threats were made to force her to testify in the trial of the cause.

Judgment affirmed.